Filed 7/25/23
See Dissenting Opinion

CERTIFIED FOR PARTIAL PUBLICATION[1]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>OSCAR LOPEZ,<br><br>    Defendant and Appellant. | E080032<br><br>(Super.Ct.No. FWV1404692)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bridgid M. McCann, Judge.  Affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, and Melissa A. Mandel, Warren J. Williams, and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

---

[1]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts IV and V.

Defendant Oscar Lopez was convicted of crimes including first degree murder and willful, deliberate, and premeditated attempted murder and sentenced to 141 years to life. In his direct appeal, we modified the sentence; we also reversed conditionally and remanded with directions to consider striking defendant's prior serious felony conviction enhancement and firearm enhancements. On remand, in October 2022, the trial court struck the prior serious felony enhancement but refused to strike the firearm enhancements. It resentenced defendant to 101 years to life.

Defendant appeals again. He contends that at resentencing, the trial court erred under various amendments to the Penal Code,[1] all of which went into effect on January 1, 2022. In the published portion of this opinion, we address his contention that under section 186.22 — as amended by Assembly Bill No. 333 (2021-2022 Reg. Sess.) (A.B. 333) — there was insufficient evidence to support the gang enhancement to count 5 (unlawful possession of a firearm).

We will hold that, because the judgment against defendant was not final, he was entitled to the ameliorative benefits of A.B. 333. However, because we had reversed solely with respect to the sentence and directed the trial court to resentence defendant, the trial court did not have jurisdiction to reconsider the gang enhancement. A.B. 333 was simply irrelevant to anything the trial court had jurisdiction to do.

In the unpublished portion of this opinion, we find no other error. Hence, we will affirm.

---

[1]     All statutory citations are to the Penal Code.

# I

# STATEMENT OF FACTS

Defendant Oscar Lopez and an accomplice, in a car, pulled up next to two men in another car. Both defendant and the accomplice said, "[W]here you guys from?," then pulled out guns and started shooting. One of the victims was killed and the other was wounded.

# II

# STATEMENT OF THE CASE

In 2017, in a jury trial, defendant was found guilty of:

Count 1: First degree murder (§§ 187, subd. (a), 189), with an enhancement for the discharge of a firearm by a principal in a gang-related crime causing great bodily injury or death (§ 12022.53, subds. (d), (e)(1)).

Count 2: Willful, deliberate, and premeditated attempted murder (§§ 187, subd. (a), 664), with an enhancement for personally and intentionally discharging a firearm (§ 12022.53, subd. (c)).

Count 3: Shooting at an occupied motor vehicle (§ 246), with an enhancement for personally using a firearm (§ 12022.5, subd. (a)).

Count 5: Unlawful possession of a firearm (§ 29800, subd. (a)(1)).

Gang enhancements (§ 186.22, subd. (b)) on every count were found true.

In a bifurcated proceeding, after defendant waived a jury, the trial court found true one strike prior (§§ 667, subds. (b)-(i), 1170.12), one prior serious felony conviction

3

enhancement (§ 667, subd. (a)), and three prior prison term enhancements (former § 667.5, subd. (b)).

Defendant was sentenced to a total of 141 years to life in prison.

In 2020, in defendant's direct appeal, we stayed the sentence on count 3; we struck the firearm enhancement to count 3 and all of the prior prison term enhancements. We then said: "The judgment as thus modified is conditionally reversed. On remand, the trial court shall consider whether to strike . . . the prior serious felony conviction enhancement[] or any of the firearm enhancements. If it does so . . . , it must resentence . . . defendant. Otherwise, it must reinstate the modified judgment."

On remand, in October 2022, the trial court struck the prior serious felony enhancement but refused to strike any of the firearm enhancements. It resentenced defendant to a total of 101 years to life in prison.

III

THE EFFECT OF A.B. 333 ON THE GANG ENHANCEMENT TO COUNT 5

Defendant contends that under section 186.22 — as amended by A.B. 333 — there is insufficient evidence to support the gang enhancement to count 5.

Defense counsel raised this argument in the trial court. The trial court, however, agreed with the prosecution that defendant was not entitled to the benefit of A.B. 333 because his conviction had previously become final.

A.B. 333, effective January 1, 2022, made a number of amendments to section 186.22. "First, Assembly Bill 333 'narrows the definition of "'criminal street gang'" to

4

"an *ongoing, organized association or group* of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more [enumerated criminal acts], having a common name or common identifying sign or symbol, and whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." [Citations.]' [Citation.]" (*People v. Renteria* (2022) 13 Cal.5th 951, 961, fn. 6.)

Second, "'imposition of a gang enhancement requires proof of the following additional requirements with respect to predicate offenses: (1) the offenses must have "commonly benefited a criminal street gang" where the "common benefit . . . is more than reputational"; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members, as opposed to persons; and (4) the charged offense cannot be used as a predicate offense. [Citation.] With respect to common benefit, the new legislation explains: "[T]o benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." [Citation.]' [Citation.]" (*People v. Ramirez* (2022) 79 Cal.App.5th 48, 63, review granted Aug. 17, 2022, S275341.)

5

Third, A.B. 333 "also includes a provision stating that, as used in [section 186.22], 'to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant.' [Citation.]" (*People v. Renteria*, *supra*, 13 Cal.5th at p. 561, fn. 6.)

Under the so-called "*Estrada* rule," "[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date. [Citation.] This presumption 'rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.' [Citations.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 852; see *In re Estrada* (1965) 63 Cal.2d 740, 743–746 (*Estrada*).) A.B. 333, to the extent that it adds new elements to a gang enhancement, reduces criminal liability; therefore, it applies to any judgment not yet final when it went into effect. (*People v. Tran* (2022) 13 Cal.5th 1169, 1206–1207.)

The People argue, however, that our conditional reversal did not reopen the conviction itself, as opposed to the sentence, and therefore the conviction became final when we issued our remittitur in 2020.

6

As both sides agree, two cases are crucial to our analysis: The Supreme Court's decision in *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), and the subsequent court of appeal decision in *People v. Salgado* (2022) 82 Cal.App.5th 376 (*Salgado).*

When Padilla was 16, he committed murder and conspiracy to commit murder. (*Padilla*, *supra*, 13 Cal.5th at p. 159; see also *id*., at p. 170 [dis. opn. of Corrigan, J.].) He was convicted and sentenced in adult court. After that judgment was final, he filed a habeas petition, seeking resentencing. The trial court vacated the sentence and reconsidered it but decided to reimpose the same sentence. Padilla appealed. The court of appeal vacated the second sentence and remanded for resentencing. (*Id*. at p. 159.)

Two weeks later, Proposition 57 was enacted. It provided that a juvenile could be tried in adult court only after a transfer hearing. The trial court nevertheless once again imposed the same sentence, without holding a transfer hearing. (*Padilla*, *supra*, 13 Cal.5th at p. 159.)

The Supreme Court had previously held that, under the *Estrada* rule, Proposition 57 applied in cases not yet final. (*Padilla*, *supra*, 13 Cal.5th at p. 160, citing *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 303, 309.) In *Padilla*, it further held that Padilla's conviction was not yet final for this purpose. (*Padilla*, *supra*, at pp. 160–163.) It rejected the argument that there was a meaningful difference between a conviction that has been vacated after becoming final and a conviction that has never become final at all. (*Id*. at pp. 162–163.)

*Padilla* also indicated that a judgment cannot be partially final and partially nonfinal.  It noted that the *Estrada* rule presumed a legislative intent that an ameliorative amendment apply as broadly as constitutionally permissible.  (*Padilla*, *supra*, 13 Cal.5th at p. 160.)  "We have not had occasion to delineate the parameters of 'the Legislature's power to intervene in judicial decisionmaking.'  [Citation.]  But we have indicated that any restrictions on that power would attach at 'the conclusion of a criminal proceeding as a whole' — i.e., when '"the last word of the judicial department with regard to a particular case or controversy"' has issued.  [Citation.]"  (*Padilla*, *supra*, 13 Cal.5th at pp. 160–161.)  Thus, "[a] case is final when 'the criminal proceeding as a whole' has ended [citation] and 'the courts can no longer provide a remedy to a defendant on direct review' [citation]."  (*Id*. at p. 161; see also *People v. Esquivel* (2021) 11 Cal.5th 671, 679 ["*Estrada*'s . . . concerns appear to point toward an inquiry focused on whether the criminal prosecution or proceeding as a whole is complete."]; *People v. McKenzie* (2020) 9 Cal.5th 40, 46 ["there is no 'judgment of conviction' without a sentence"].)[2]

---

[2]　　It appears that *Padilla* overruled, sub silentio, *People v. Jackson* (1967) 67 Cal.2d 96, which had held that when a habeas petition is granted solely on the issue of penalty, "the original judgment on the issue of guilt remains final during the retrial of the penalty issue and during all appellate proceedings reviewing the trial court's decision on that issue." (*Jackson*, *supra*, 67 Cal.2d at pp. 98–99; but see *Padilla, supra,* at pp. 183–184 [dis. opn. of Corrigan, J.] ["*Jackson* did not involve an interpretation of *Estrada* and provides little guidance on the limits of *Estrada*'s presumption regarding legislative or electoral intent"]; but see also *People v. Wilson* (2023) ___ Cal.6th. ___, ___ [2023 Cal. LEXIS 3158 at pp. *54–*55] [citing *Jackson* with apparent approval but ultimately not relying on it].)

In a crucial passage, however, *Padilla* also said: "[T]he Attorney General argues that vacatur of a defendant's sentence 'does not allow a resentencing court to consider new claims or affect any part of the judgment other than the sentence.' But the right and remedy we recognize today does not allow Padilla to raise claims unrelated to his sentence. . . . He must receive a transfer hearing in a juvenile court, where the court will decide whether criminal adjudication is appropriate for the murder of his mother and conspiracy to kill his stepfather. Whatever potential that hearing may have for reducing his punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla*, *supra*, 13 Cal.5th at pp. 169–170.)

In other words, in *Padilla*, the Attorney General argued that the vacation of a sentence does not allow the relitigation of guilt. The Supreme Court responded that the vacation of Padilla's sentence was not going to result in the relitigation of his guilt. Thus, it *assumed* the Attorney General's argument was correct; it did not *hold* that it was correct (or incorrect).

The People argue that this crucial passage was not dictum, because it was necessary to the decision: "If the entire judgment . . . had been rendered nonfinal by the sentence's vacatur, the defendant would have been entitled to a juvenile transfer hearing potentially resulting in a new adjudication hearing on the issue of guilt." Not so.

The Supreme Court had previously held that a juvenile convicted in adult court whose conviction was not yet final when Proposition 57 went into effect is entitled to a new transfer hearing, but not a new trial. (*People v. Superior Court* (*Lara*), *supra*, 4

9

Cal.5th at pp. 303, 309–310, 312–313.)  It reasoned, essentially, that Proposition 57 ameliorated only punishment, not criminal liability.  (See *id.*, at pp. 303, 308–309.)  Thus, "'[n]othing is to be gained by having a "jurisdictional hearing," or effectively a second trial, in the juvenile court.' [Citation.]" (*Id.* at pp. 309–310.)  Accordingly, in *Padilla*, even though the entire judgment was nonfinal, the application of Proposition 57 meant only that Padilla was entitled to a new transfer hearing; even if the result of the transfer hearing was that he should remain in the juvenile system, he was not entitled to a new adjudication of guilt.  (*Padilla*, supra, 13 Cal.5th at pp. 169–170.)

Nevertheless, the crucial passage provides the key to deciding this case.  In it, the Supreme Court accepted that the vacation of a sentence would not authorize the relitigation of guilt — even if the conviction is nonfinal and an amendment ameliorating guilt has gone into effect.  On one hand, this was dictum.  On the other hand, "'"[e]ven if properly characterized as dictum, statements of the Supreme Court should be considered persuasive."' [Citations.]" (*People v. Reyes* (2020) 56 Cal.App.5th 972, 994.)  It would have been easier for *Padilla* to say that, as long as a conviction is nonfinal, an amendment ameliorating guilt *always* authorizes the relitigation of guilt — if that is the law.  Why was it careful instead to note that its opinion was not authorizing the relitigation of guilt?

The answer is that the Attorney General in *Padilla* was right — when an appellate court affirms a judgment as to guilt, reverses it as to the sentence, and orders a limited remand for resentencing (see *Peracchi v. Superior Court* (2003) 30 Cal.4th 1245, 1254–

10

1256), "'[t]he order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled."'" [Citation.] On remand, the lower court may act only within these express jurisdictional limits. [Citation.]" (*People v. Lewis* (2004) 33 Cal.4th 214, 228.) However, the point the Attorney General was making went to whether the trial court has *jurisdiction*. Because Padilla's conviction had been affirmed and only the sentence had been vacated, the trial court did not have *jurisdiction* to readjudicate the conviction. The Supreme Court implicitly acknowledged this, but pointed out that Proposition 57 did not require readjudication of the conviction.

Here, similarly, defendant's conviction was affirmed; only the sentence was reversed, and we remanded with directions to resentence defendant. "When there has been a decision upon appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void. [Citations.]" (*Hampton v. Superior Court* (1952) 38 Cal.2d 652, 655; accord, *Medina v. Superior Court* (2021) 65 Cal.App.5th 1197, 1226; *People v. Ramirez* (2019) 35 Cal.App.5th 55, 64.)

We *accept* that on remand, defendant was fully entitled to the ameliorative benefits of A.B. 333. However, those benefits consisted of the redefinition of a gang enhancement, *which was irrelevant to anything the trial court had jurisdiction to do*.

We turn, then, to our sister court's opinion in *Salgado*. Salgado was convicted of five crimes, including murder, each with a gang enhancement, and sentenced. After that

judgment was final, the Department of Corrections and Rehabilitation recommended resentencing under former section 1170, subdivision (d)(1). The trial court duly resentenced Salgado, including on one gang enhancement. (*Salgado*, *supra*, 82 Cal.App.5th at p. 379.)

Salgado appealed. While his appeal was pending, A.B. 333 went into effect. (*Salgado*, *supra*, 82 Cal.App.5th at p. 378.) Thus, he argued that the jury had never made the necessary findings on the elements of the gang enhancements under A.B. 333. The People responded that the conviction and the gang enhancements were already final before A.B. 333 went into effect. (*Id.* at p. 380.)

The appellate court rejected the People's argument: "The California Supreme Court has recently held that 'once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence.' (*People v. Padilla* (2022) 13 Cal.5th 152, 163 . . . .) Accordingly, when Salgado was resentenced under former section 1170, subdivision (d), his criminal judgment was 'no longer final.' [Citation.]" (*Salgado*, *supra*, 82 Cal.App.5th at p. 380.)

The discussion in *Salgado* is short. The court did not discuss the crucial passage in *Padilla*; it also did not consider the argument the Attorney General made in *Padilla* that a conviction may not be relitigated when only the sentence is vacated. "It is axiomatic that a case is not authority for an issue that was not considered. [Citation.]" (*People v. Brooks* (2017) 3 Cal.5th 1, 110.) Therefore, we decline to follow *Salgado*.

12

In sum, then, we hold that defendant's conviction was nonfinal, and therefore the law that applied to his case on remand included A.B. 333. However, on remand, the trial court had no jurisdiction to readjudicate the gang enhancements. Even assuming that, under A.B. 333, there was insufficient evidence to support the gang enhancement to count 5, there was nothing the trial court could or should have done about it.

IV

THE EFFECT OF SENATE BILL NO. 567 ON

THE IMPOSITION OF THE UPPER TERM

Defendant contends that under section 1170 — as amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (S.B. 567) — the trial court erred by imposing the upper term on count 5 based on aggravating circumstances that had not been found true by a jury nor admitted by defendant. In the event that defense counsel forfeited this contention by failing to raise it below, defendant also contends that defense counsel rendered ineffective assistance.

On count 5, the trial court imposed six years (double the upper term). It explained: "The Court is considering aggravating factors. That I'm not sure if they have to be proven at this point to a jury. But the Court does note that there were several aggravating factors which the Court could find, even under the new sentencing format, in that his prior performance on . . . parole was unsatisfactory, and his criminal record was of increasing seriousness. And with those two, will find the upper term . . . is appropriate." Defense counsel did not object.

13

Section 1170, subdivision (b)(2) provides: "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Section 1170, subdivision (b)(3) further provides: "Notwithstanding paragraph[] . . . (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."

The People respond that defense counsel forfeited this contention by failing to raise it below. We disagree. The trial court raised on its own the question of whether "aggravating factors . . . have to be proven at this point to a jury . . . ." Moreover, it resolved it by ruling "there were several aggravating factors which the Court could find, even under the new sentencing format . . . ." This was sufficient to preserve the issue for appeal. (*People v. Stitely* (2005) 35 Cal.4th 514, 537, fn. 12.)

And this ruling was correct, except in one trivial respect. Under section 1170, subdivision (b)(3), the trial court could "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." "Prior convictions," in this context, includes the fact that a defendant's prior performance on parole or probation was unsatisfactory; it also includes

14

the fact that a defendant's prior convictions are increasingly serious. (*People v. Pantaleon* (2023) 89 Cal.App.5th 932, 938; see also *People v. Towne* (2008) 44 Cal.4th 63, 70–71 [for Sixth Amendment purposes, the fact that a defendant's prior performance on probation or parole was unsatisfactory may be determined by a judge based on the defendant's prior convictions]; *People v. Black* (2007) 41 Cal.4th 799, 819–820 [for Sixth Amendment purposes, the fact that a defendant's prior convictions are increasingly serious may be determined by a judge based on the defendant's prior convictions].)

The trial court's only error, then, was in finding these aggravating circumstances based on the probation report, rather than based on a certified record of conviction. However, this error was not prejudicial. There is no reason to suppose the probation report was inaccurate.[3] Indeed, had it overstated defendant's criminal history, presumably defendant and his counsel would have called the discrepancy to the trial court's attention. Thus, the appellate record does not show that, if the trial court had considered defendant's certified record of conviction, he would have enjoyed a more favorable outcome. (See *People v. Watson* (1956) 46 Cal.2d 818, 824.)

---

[3]     Defendant's "969b packet" (see § 969b) is in our record. It shows only two of the three adult convictions listed in the probation report. However, only those two convictions were alleged in the information. Thus, there was no reason for the 969b packet to reflect the third.

15

## V

## THE EFFECT OF S.B. 567 ON THE FIREARM ENHANCEMENTS

Defendant contends that under section 1385 — as amended by S.B. 567 — the trial court abused its discretion by refusing to strike the firearm enhancements.

A.  *Additional Factual and Procedural Background.*

As mentioned (see part II, *ante*), we directed the trial court to consider whether to strike any of the firearm enhancements.  On remand, defense counsel argued that the trial court should strike one or both firearm enhancements because defendant was no longer using drugs, was no longer active in a gang, and was enrolled in several self-help programs; she also argued that, even without the firearm enhancements, he was going to die in prison.  The prosecution responded that, in light of defendant's culpability, "he is not deserving of any reduced punishment."

The trial court refused to strike any firearm enhancements.  It explained:  "[T]here were two separate individuals involved.  And . . . Mr. Lopez did personally use that firearm as to both of the individuals.  [¶]  Based upon that, . . . the Court is not inclined to use its discretion on either the 12022.53(c) or the 12022.53(d)."

It added:  "The Court does recognize that 1385(c)(2)(b), as well as (c)(2)(c) both apply in this case.  Under (c)(2)(b) there are multiple enhancements.  At which point, unless it is not in the furtherance of justice, the Court must dismiss one of the enhancements.  And (c), that if the application could result in a greater sentence than 20 years, the Court shall dismiss the enhancements.  There are two factors that the Court

considers in this. . . . [A]t no point in time do I believe that the legislature or the voters . . . indicated that simply because the crime committed resulted in a sentence of more than 20 years or with more than one enhancement, that that means that every other enhancement has to be considered to be stricken[4] unless —

"And I recognize both the legislature's intent to reduce population in the prison. But that in taking 1385(c)(2) on its face, a situation like this, where there are two victims, would render one victim's sentence or the sentence for one was the crimes against the second victim, completely null. And I don't believe that that was the intent at any time."

B.      *Discussion*.

Section 1385, subdivision (c), as relevant here, provides:

"(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so . . . .

"(2)  In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the

---

**4**      The People concede that, because the trial court said "has to be considered to be stricken," rather than "has to be stricken," it could be understood to mean that it did not even consider striking the firearm enhancements. In his reply brief, defendant notes this concession, then asserts that "the trial court erred in failing to consider striking the enhancements, and remand is required for the trial court to do so." He forfeited this contention by failing to raise it in his opening brief. (*People v. Nelson* (2015) 240 Cal.App.4th 488, 497.) In any event, it is clear from the totality of the trial court's remarks that it did consider striking the firearm enhancements.

enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. . . . [¶] . . . [¶]

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed."

Subdivision (c)(2)(C) — the "enhancement could result in a sentence of over 20 years" — did not apply here. Even aside from the firearm enhancements, defendant was sentenced to 75 years to life in prison. Thus, the firearm enhancements could not "result in" — i.e., they could not be the "but for" cause of — a sentence of over 20 years.

However, subdivision (c)(2)(B) — multiple enhancements in a single case — clearly did apply.

Defendant argues that, under these subdivisions, dismissal is mandatory (at least when dismissal of the enhancement would not endanger public safety). So far, all case authority is to the contrary. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239–241, review granted Apr. 19, 2023, S278786; *People v. Walker* (2022) 86 Cal.App.5th 386, 396–398, review granted Mar. 22, 2023, S278309.) "[T]he statement that a court 'shall' dismiss certain enhancements appears as a subpart to the general provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' [Citation.] In other words, the dismissal of the enhancement is conditioned on a court's finding

18

dismissal is in the interest of justice." (*People v. Anderson*, *supra*, at p. 239.) Rather than prolong this opinion unduly, we adopt the reasoning in these cases.

Defendant also argues that the trial court's stated reason for refusing to dismiss the enhancements — i.e., the existence of two victims — was irrational, arbitrary, and "not required or contemplated by the legislature." The overriding consideration, however, was whether dismissal was "in the furtherance of justice . . . ." (§ 1385, subd. (c)(1); *People v. Anderson*, *supra*, 88 Cal.App.5th at p. 239.) It is long-established that "[a] defendant who commits an act of violence with the intent to harm more than one person . . . is more culpable than a defendant who harms only one person." (*Neal v. State* (1960) 55 Cal.2d 11, 20, disapproved on other grounds in *People v. Correa* (2012) 54 Cal.4th 331, 334; see also *In re Tameka C.* (2000) 22 Cal.4th 190, 196 [firearm enhancements; "An increased sentence measured by the risk of harm to multiple victims reflects a rational effort to deter . . . ."]; *People v. Smart* (2006) 145 Cal.App.4th 1216, 1225 [firearm enhancements].)

Defendant complains that the trial court did not make a finding that dismissal of the enhancement would endanger public safety. However, it did not have to. It could refuse to dismiss the enhancements if it found *either* that dismissal would endanger public safety *or* was not in the interests of justice. (*People v. Anderson*, *supra*, 88 Cal.App.5th at p. 240.) It made the latter finding, and as discussed, that finding was not arbitrary or irrational.

## VI

## DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ_____
                                                              P. J.


I concur:

MILLER_____
                            J.

[*People v. Lopez*, E080032]

RAPHAEL, J., Dissenting.

This case is still on direct appeal.  It has not been reduced to a final judgment.  For that reason, the legislation the majority agrees applies retroactively to non-final cases applies to this one.  That is all we need to know to remand the case and direct the trial court to apply the new law.

The majority has been diverted because this is Lopez's second appeal, as we remanded for resentencing the first time.  That the case has been here before does not matter.  The California Supreme Court has directed courts to presume the Legislature intended a new statutory lighter penalty to apply to any case which has not reached final judgment.  The judgment in this case is non-final because it is still on direct appeal.

The majority focuses on caselaw involving completed direct appeals where the judgments *have* become final, but the judgments have been reopened in postjudgment proceedings.  In *those* circumstances, the question arises as to whether a motion that reopens the case for one purpose reopens it for purposes of allowing application of a retroactive law.  This case has never been reopened because it was never closed.  New laws that are retroactive on direct appeal apply here.  Based on this simple principle— articulated in binding Supreme Court precedent—I respectfully dissent.

I

In 2017, defendant Oscar Lopez was convicted of a firearm offense.  He received a gang enhancement for that conviction under Penal Code section 186.22.  He appealed, and in 2020, we remanded his case for resentencing.  Before that resentencing, the law

changed. Effective January 1, 2022, Assembly Bill No. 333 (2021-2022 Reg. Sess.) (A.B. 333) heightened the standard for proving a gang enhancement.

About 10 months later, the trial court resentenced Lopez. He asked the trial court to apply A.B. 333 and find insufficient evidence supported the gang enhancement. (Maj. opn., *ante*, at p. 4.) The trial court, however, found Lopez "was not entitled to the benefit of A.B. 333 because his *conviction* had previously become final." (*Ibid.*, italics added.)

The question before us is whether the trial court was correct in refusing to apply A.B. 333, which the majority agrees is retroactive to non-final cases, by finding Lopez's *conviction* was final at the time of resentencing. Answering that question is easy under settled law because this case was never reduced to final judgment.

If an ameliorative statute is silent as to its retroactivity, our Supreme Court has since *People v. Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*) applied a presumption "that the Legislature must have intended that the new statute . . . should apply to every case to which it constitutionally could apply." That means that such a new law applies "provided the judgment convicting the defendant of the act is not final." (*Ibid.*) That is, such laws apply to "all cases not reduced to final judgment." (*Id.* at p. 746.)

It has been clear since *Estrada* that criminal cases are not final until final judgment. The leading recent authorities on precisely when a case becomes final for *Estrada* retroactivity purposes are two opinions of our Supreme Court, *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), and *People v. Esquivel* (2021) 11 Cal.5th 671 (*Esquivel*). In these cases, the court made clear that a criminal case does not become final in *part*. Rather, the question is whether the "criminal *prosecution or proceeding*

2

concluded before the ameliorative legislation took effect." (*McKenzie*, *supra*, 9 Cal.5th at p. 46 [italics added].) The test for finality is "whether the criminal prosecution or proceeding as a whole is complete." (*Esquivel*, *supra*, 11 Cal.5th at p. 679.)

*Esquivel* and *McKenzie* involved situations where criminal defendants had failed to appeal to challenge the imposition of their sentences, yet later appealed after they were found to have violated conditions of probation. (*McKenzie*, *supra*, 9 Cal.5th at p. 43; *Esquivel*, *supra*, 11 Cal.5th at p. 673.) In each of those cases, our Supreme Court rejected the People's argument that the sentence had earlier become final, though the probation revocation portion of the case had not. (See *McKenzie*, at pp. 48-51; *Esquivel*, at pp. 679-680.) Those cases make clear there is a single moment of finality for retroactivity purposes, and that is when the case as a whole comes to an end.

That principle has been maintained through the half-century before *Esquivel* and *McKenzie*. (See, e.g., *Estrada*, *supra*, 63 Cal.2d at p. 747 [finality when "prosecutions" are "reduced to final judgment"]; *People v. Rossi* (1976) 18 Cal.3d 295, 304 ["any such proceeding which, at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it"] [cleaned up]; *People v. Nasalga* (1996) 12 Cal.4th 784, 789, fn.5 ["a judgment is not final until the time for petitioning for a writ of certiorari in the United States Supreme Court has passed"] [plur. opn.]).

The simple application of this principle here: this case has not reached a final judgment, so A.B. 333 applies retroactively to it. The majority instead reasons that Lopez's conviction is final but the sentence is not. (Maj. opn., ante, at pp. 10-11.) This is a misapplication of the binding precedent from the Supreme Court cases cited above,

3

as there is only one final judgment in a criminal case. (See *McKenzie*, *supra*, 9 Cal.5th at p. 46 ["there is no 'judgment of conviction' without a sentence"].)

The majority's invocation of the limited "jurisdiction" the trial court had on remand (maj. opn., ante, at pp. 11-12) confuses the ordinary acts that a trial court is authorized to take with its fundamental jurisdiction over a case. (See *People v. Chavez* (2018) 4 Cal.5th 771, 780 [discussing two meanings of the term "jurisdiction"].) The *Estrada* presumption is a construction of what the legislature intends for the application of an ameliorative law if it is silent on retroactivity. Our Supreme Court has articulated that we presume that the legislature desires that an ameliorative law apply at any stage before final judgment, because "any constraint on the Legislature's power to affect 'final' criminal judgments would appear to arise from the conclusion of a criminal proceeding as a whole." (*Esquivel*, *supra*, 11 Cal.5th at p. 678; see id. at p. 679 [earlier "final judgment for purposes of appealability" did not make part of case final for *Estrada*].)

Today's opinion contradicts *Esquivel*, *McKenzie*, and cases that apply A.B. 333 retroactively where there was an earlier remand for resentencing. (See *People v. Campbell* (June 30, 2023) __Cal.App.5th__ [2023 Cal.App. Lexis 500]; *People v. Boukes* (2022) 83 Cal.App.5th 937; *People v. Sek* (2022) 74 Cal.App.5th 657; see also *People v. Montes* (2021) 70 Cal.App.5th 35, 39 [new law requiring juvenile transfer hearing applies after resentencing].)

This case is still on direct appeal, even though it is the second appeal after remand. The case has not been reduced to a final judgment. We should remand for the trial court to apply A.B. 333.

4

## II

The majority is shadowboxing with cases in the wrong arena.

The retroactivity discussion in the opinion features two cases. The majority purports to reject *People v. Salgado* (2022) 82 Cal.App.5th 376 (*Salgado*) and its application of *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*). (Maj. opn., *ante*, at pp. 7-12.) Those cases arose from a situation two steps beyond ours. First, they *had* become final. When final, a new law would not apply retroactively to them under *Estrada*.

Second, *Padilla* and *Salgado* were each reopened through postjudgment proceedings on a particular issue. The appellate opinions addressed the difficult question of the scope of the reopening: whether, for *Estrada* retroactivity purposes, the *reopened case* remained final for purposes of a different new law that addressed a different issue than the law and issue that reopened it. That is, did the *whole* previously final case return to being non-final? Or was the case effectively reopened for a single issue only?

In *Padilla*, our Supreme Court split on the issue. The defendant's juvenile murder conviction became final in 2001 when our Supreme Court denied his petition for review and he did not petition the United States Supreme Court for certiorari. (*Padilla*, *supra*, 13 Cal.5th at p. 170 [Corrigan, J., dissenting].) More than a decade later, he successfully obtained a resentencing on a petition for a writ of habeas corpus, due to new constitutional procedures applicable to his life-without-parole sentence. (*Id*. at p. 158.) While the case was on appeal from his new post-habeas sentence, California voters passed a *different* new law that would help him if retroactive to his case. (*Ibid*.) *Padilla*

5

*was* final before the habeas grant, so the new law would not have applied. The question for our Supreme Court was whether it reverted to non-final with the habeas resentencing.

The justices divided on that question. But all the justices accepted that *Estrada* retroactivity applied to cases that had never become final at all. (See *Padilla*, *supra*, 13 Cal.5th at p. 161 ["A case is final when the criminal proceeding as a whole has ended"][cleaned up]; *id*. at p. 173 [Corrigan, J., dissenting] ["we have consistently understood *Estrada*'s rule to apply to a case that had not been reduced to a final judgment"].) That is the easy issue before us today. We are in the posture of *Padilla* in the year 2000, before it became final. The tougher *Padilla* question of what to do in a final-but-reopened case has no application here.[1]

*Salgado*, likewise, was a final case that was reopened. The defendant's murder conviction was affirmed on direct appeal in 2007 (82 Cal.App.5th at p. 379), meaning under *Estrada* no new laws would apply. In 2021, however, the defendant was resentenced after a recommendation from the California Department of Corrections and Rehabilitation under Penal Code section 1170, subdivision (d)(1). (*Salgado*, *supra*, at p. 379.) While the appeal from the resentencing was pending, A.B. 333 went into effect.

---

[1] The majority declares *Padilla* silently overruled *People v. Jackson* (1967) 67 Cal.2d 96 (*Jackson*), a case where a death penalty sentence reopened for a retrial was held non-final even though the murder conviction was not reopened. (Maj. opn., *ante*, at p. 8, fn.2.) Because *Jackson* also involves a postjudgment motion's reopening of a final criminal case, it should not be at issue in our direct appeal. *Jackson* correctly stated that "[a] judgment becomes final when all avenues of direct review are exhausted." (*Jackson*, *supra*, 67 Cal.2d at p. 98.) As to the postjudgment reopening, it stated that its decision on how much of the case was reopened was "a matter of state procedure," and cited prior caselaw under which murder convictions remained when errors caused the death penalty phase of a trial to be reopened for retrial. (*Id*. at p. 99)

6

(*Salgado*, at p. 378.)  Citing *Padilla* for the proposition that the resentencing was a vacatur of the original sentence, the Court of Appeal concluded that *Salgado* was "no longer final," so A.B. 333 applied.  (*Salgado*, at p. 380 [cleaned up].)

The majority disagrees with *Salgado*'s reasoning, so it purports to create a legal split with that case.  The majority believes *Salgado* should have held that the *sentence* in the case was rendered non-final when it was reopened for resentencing, but that does not reopen the *conviction* to an A.B. 333 challenge.[2]

The majority is correct about one crucial thing: today's decision conflicts with case law.  But it is wrong about what the conflict is.  *Salgado*'s reasoning is not at issue here because this case has never become final, so it has never been reopened.  This case has not been reduced to a final judgment, and the criminal proceeding as a whole has not ended.  Today's opinion instead conflicts with *Esquivel* and other case law holding that cases are not final for *Estrada* retroactivity purposes while on direct appeal.

RAPHAEL _____

J.

---

[2]  The majority's reasoning raises a question as to whether it is correct that the conviction, rather than the sentence, includes what is known as  the "criminal street gang sentencing enhancement."  (*In re Lopez* (2023) 14 Cal.5th 562, 567).

7